UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MMT, INC. d/b/a StormTree     :
       Plaintiff,   :
           :
v.          :  C.A. No 2021- _____
           :
HYDRO INTERNATIONAL, INC.,  :  **JURY TRIAL DEMANDED**
HIL TECHNOLOGY, INC. and   :
HYDRO INTERNATIONAL, plc   :
       Defendants.  :

## VERIFIED COMPLAINT
## FOR PATENT AND TRADEMARK INFRINGEMENT

Plaintiff MMT, Inc. dba StormTree, brings this action against defendant Hydro International Inc. also known as HIL Technology Inc., and Hydro International plc, for patent infringement, trademark infringement and ancillary State law claims as set forth more particularly herein.  By this Verified Complaint, Plaintiff seeks, *inter alia*, injunctive relief and money damages and alleges as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff MMT, Inc. is a Rhode Island corporation with its principal place of business located at 25 Blodgett Avenue, Pawtucket, Rhode Island that does business under the fictitious business name "StormTree."  StormTree is a small business that designs, markets, and sells an open design biofiltration device that removes sediment, chemical pollutants, and debris from stormwater runoff using a "tree filtering" technology.  Its products are sold throughout the United States.

2. Upon information and belief, Defendant Hydro International, Inc. is a Delaware corporation with its principal place of business at 94 Hutchins Drive, Portland, Maine.  Upon further information and belief, HIL Technology, Inc. is a Maine corporation with its principal

place of business at 94 Hutchins Drive, Portland, Maine that has registered in Maine to do business under the assumed names "Hydro International (US), Inc." and "Hydro International Stormwater, Inc."  Notwithstanding any intentional or inadvertent redundancy, duplication, irregularity or mistake in the incorporation of separate entities in Delaware and Maine, respectively, this Verified Complaint refers to the business located at 94 Hutchins Drive, Portland, Maine which does business as "Hydro International" and markets and sells stormwater filtration products as "Hydro (US)."

3.      Upon information and belief, Defendant Hydro International plc is a private limited company organized under the laws of the United Kingdom with its principal place of business at Shearwater House, Clevedon Hall Estate, Victoria Road, Clevedon, United Kingdom (hereinafter, "Hydro (UK)").

4.      Upon information and belief, Hydro (US) is wholly-owned by Hydro (UK). Although separately incorporated, Hydro (US) and Hydro (UK) conduct business in the United States and elsewhere as a single, common enterprise with substantial disregard of the separate nature of their corporate entities.  Besides the obvious identity of their names, the two companies market themselves worldwide, without distinction, using the same internet platform and web address (www.hydro-int.com).  Hydro (UK) holds itself out to the world as having offices for its Americas Wastewater Division in Hillsboro, Oregon and its Americas Stormwater Division in Portland, Maine, thereby creating the appearance that its US-based operations are the same business enterprise regardless of corporate formality.  Both distribute marketing literature using the common reference "hydro-int.com."

5.      Also, as is more particularly set forth herein, Hydro (UK) caused an application to be filed with the United States Patent and Trademark Office (hereinafter the "USPTO") that

claimed subject matter that infringed upon the patented technology that is the subject of this action; and, acting at the direction and control of Hydro (UK), representatives of Hydro (US) purported to assign their rights under that application to Hydro (UK).  There is, in short, such a confused intermingling of corporate personality in their business dealings with Plaintiff and others in the United States as to create serious ambiguity about the manner and capacity in which each company and their representatives are acting.  In reality and practice, separate corporations do not really exist with respect to the transactions alleged herein.  Rather, Hydro (US) is merely an *alter ego* of Hydro (UK) that operates ambiguously in the United States.  Thus, unless otherwise specified in this Verified Complaint, Hydro (US) and Hydro (UK) are referred to collectively herein as "Hydro."

6.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114, 1116-1118, 1121, 1125(a) and 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b), and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

7.    This Court has personal jurisdiction over Hydro (US) and Hydro (UK) based on their contacts with the State of Rhode Island, tortious injury caused by them to Plaintiff in Rhode Island, and their express contractual submission to the jurisdiction of the courts of Rhode Island, as more particularly set forth in Paragraph 26 hereof.

8.    This Court has long arm jurisdiction over the nonresident defendants pursuant to RIGL § 9-5-33(a).

9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

**Facts Common To All Counts**

**A.     Paul Iorio's Invention and the Patented Technology, StormTree, and Its Registered Federal Trademarks**

10.     Paul Iorio ("Iorio") is an inventor now residing in Pawtucket, Rhode Island.  Iorio holds a Masters of Science degree in Environmental Resource Management and Administration and is an expert in the field of sustainable stormwater treatment systems.  On June 19, 2009, Iorio prepared and filed a patent application directed to a stormwater treatment system and method for removing sediment, chemical pollutants, and debris from stormwater runoff by utilizing bioretention practices including physical, chemical and biological processes by passing stormwater runoff water through a multi-phase filtering and treatment train.

11.     Iorio's stormwater treatment system is distinctive because it is an "open design system" (meaning, open bottom and open sided) and is a manufactured structure or frame that can perform on its own or in combination with trees to filter stormwater runoff through an engineered media, (i.e., a soil recipe containing beneficial organic and/or inorganic material). Although a tree is not essential to the operation of the system, unlike other tree filter systems on the market which employ a closed sided and closed bottom "vault" design, Iorio's system allows healthy tree root growth and a larger engineered media bed that extends beyond the interior of the open frame where the engineered media contacts the native soil.  Over time, a closed vault design will threaten the health of the tree, whereas an open design system allows the tree to thrive because its roots can grow out the bottom and/or sides.  Iorio's design is the only patented stormwater filtration device comprised of a combined open bottom and open sided structure in the commercial market.

12.    On December 18, 2012, the USPTO issued to Iorio, as inventor, U.S. Patent No. 8,333,885 B1, entitled "Stormwater Filtration System and Method with Pretreatment Capability" ("the '885 Patent"). A true and correct copy of the '885 Patent is attached hereto as Exhibit A.

13.    On January 31, 2014, MMT Inc. dba StormTree was organized as a Rhode Island corporation. Since then, StormTree has built a successful business marketing Iorio's technology in several States and has built valuable business relationships and has prospective advantageous relationships based on its valuable and unique, open design system technology.

14.    On or about March 2014, StormTree engaged Dr. Mike Dietz, Program Director of Connecticut Institute of Water Resources at the University of Connecticut, to conduct a study of Iorio's tree filter system performance. Dietz monitored an installed StormTree unit and collected and analyzed samples of water to quantify pollutant removal rates and generated detailed data of his findings that was confidential and proprietary information owned by StormTree.

15.    On August 9, 2015, Iorio assigned his rights to the '885 Patent to StormTree pursuant to an Assignment Agreement executed that was recorded at the USPTO on September 9, 2015.

16.    In 2015 and 2016, Iorio filed three Provisional Patent Applications, namely U.S. Provisional Application Serial Number 62/203,618, entitled "Stormwater Management and Bioinfiltration System," and U.S. Provisional Application Serial Number 62/253,752, entitled "Stormwater Management and Bioinfiltration System and Adaptable Liner," and U.S. Provisional Application Serial Number 62/314,622, entitled "Inflow Stormwater Management and Bioinfiltration System." (the '618, and '752 and '622 Applications). These three Provisional Patent Applications were each directed to improvements on the open design system of the '885

5

Patent and improved methods for removing sediment, chemical pollutants, and debris from stormwater runoff by utilizing bioretention practices including physical, chemical and biological processes.

17.    Each of the '618, and '752 and '622 Provisional Patent Applications contained proprietary information and was not of public record at the time of filing.

18.    Iorio thereafter filed International Patent Application No. PCT/US2016/046438, entitled "Stormwater Biofiltration System and Method," (the "PCT Application"), claiming priority to the '618, and '752 and '622 applications which published for the first time on February 16, 2017 as International Publication No. W0 2017/027644 A1. The PCT Application combined the teachings of the '618, '752 and '622 applications.

19.    Thereafter, Iorio filed a USPTO National Stage "§371(c)(1)" application claiming priority to the PCT Application with the USPTO on August 10, 2016 which published on June 28, 2018 and ultimately issued as U.S. Patent No. 10,563,392, entitled "Stormwater Biofiltration System and Method" ("the '392 Patent"), as is more particularly set forth in Paragraph 43 below.

20.    The '618, '752 and '622 Provisional Applications, as well as the PCT Application and the '940 Application, were also assigned to StormTree.

21.    On October 11, 2016, StormTree received US Trademark Registration No. 5057487 for the character mark StormTree® for filtering units for removing sediment and contaminants from stormwater influent using a soil media.  A true and correct copy of the StormTree character mark US Trademark Registration is attached hereto as Exhibit B-1

22.    Later, on September 5, 2017, StormTree received US Trademark Registration No. 5280518 for a distinctive logo and graphic design that incorporates the StormTree® word mark with letters forming plant roots.  (Registrations 5057487 and 5280518 are hereafter collectively

referred to as the "Marks.")  StormTree has continuously used the Marks in trade and commerce prior to and since StormTree®'s registration. A true and correct copy of the StormTree logo and graphic design trademark registration is attached hereto as Exhibit B-2.

**B.**     **Hydro, the Nondisclosure Agreement with StormTree, Hydro's Breach and Development of a Competing Product**

23.     Hydro is in the business of selling stormwater and wastewater management products.  For a number of years, Hydro marketed a stormwater filtration system in the United Kingdom known as Filterra® that it did not own but rather that was licensed to it by a third party. Unlike Iorio's design, the Filterra® stormwater filtration system was a closed bottom "vault" design.

24.     On or about September 2014, the Filterra® system was sold to a Hydro competitor.  The license that Hydro initially had for the Filterra® system was thereafter terminated, and Hydro lost its ability to market and sell the Filterra® system in the United Kingdom.  Consequently, Hydro wanted and needed to license an alternate stormwater filtration product or to develop a product of its own.

25.     On or about October 2014, representatives of Hydro contacted Iorio regarding the possibility of forming a strategic partnership with StormTree for the purpose of allowing Hydro to market and sell his invention.  Hydro representatives expressed the desirability of adding a stormwater filtration system to its line of product offerings, and, in particular, in the California market.

26.     On February 24, 2015, Hydro and StormTree entered into a "Confidentiality and Nondisclosure Agreement," a true copy of which is attached hereto as Exhibit C (hereinafter the "NDA").  Under the NDA, Hydro (US) and Hydro (UK), jointly and severally, agreed to receive

certain scientific, technical and commercial data, know-how, formulae, processes, designs, reports, drawings, specifications, quality control processes, and other technical marketing and commercial and financial information from StormTree, and agreed to hold such information in "strict confidence" and not to disclose or permit the information to be made available to any third party, and not to "use the information in such a way as to cause the receiving party or any third party to gain commercial advantage over the disclosing party." In addition, Hydro (US) and Hydro (UK) each agreed irrevocably to submit to the nonexclusive jurisdiction of the courts of the State of Rhode Island with respect to any claim, dispute or difference arising out of or in connection with their agreement.

27.    Pursuant to the NDA, and in anticipation of a potential joint marketing agreement, StormTree disclosed to Hydro, and allowed Hydro access to its installation processes, Iorio's mental impressions, know-how, and then-nonpublic information relating to Iorio's open design, including the soil media recipe comprising elements contained therein and enhanced pollutant reduction capacity. StormTree also disclosed to Hydro, Dr. Dietz's research, analysis and some nonpublic elements of the '618, '752, and '622 Applications which were unpublished at the time, and also valuable business contact and contract information relating to its pricing and services.

28.    Over the course of the spring and summer 2015, and after receiving disclosures pursuant to the NDA, StormTree and Hydro began negotiations for a joint marketing agreement between them. Chris Fromme, Jim Newkirk, David Mongeau, Kim Jordan, Jeremy Fink, Lisa Lemont, and Dave Scott, all technical or high-level executives of Hydro (US), along with representatives from Hydro (UK), were involved in the negotiations.

29.    On May 5, 2015, with StormTree's permission, Lisa Lemont (hereinafter referred to as Lemont), Hydro's Business Development Manager contacted Dietz to schedule an in-

person meeting and site visit to discuss the monitoring program and inspect the monitored StormTree® unit.

30.    On or about June 5, 2015, Fromme and Scott were sent by Hydro to observe StormTree install one of its systems in Santa Fe Springs, California and to take photographs and ask relevant questions regarding the system and its installation process.  Members of Hydro (UK)'s management team also inspected one of StormTree's devices in South Portland, Maine. Through these investigations, Hydro learned that the StormTree® system can be configured in multiple ways and dimensions to suit multiple site situations and/or site constraints more so than other systems on the market.

31.    Hydro continued to express interest in consummating a joint marketing agreement throughout the summer of 2015.

32.    In early September 2015, however, Hydro expressed an interest beyond consummating a joint undertaking with StormTree, but instead in buying StormTree or some ownership interest in it.  StormTree expressed an unwillingness to sell equity by reaffirming its desire for a joint venture with Hydro.

33.    By September 21, 2015, StormTree was under the impression that a final agreement had been reached, and it forwarded a form of the "Joint Marketing, Sales, and Order Fulfillment Agreement" for Hydro's execution.  On October 27, 2015, however, Jim Newkirk communicated that Hydro would not be executing the agreement because Hydro had decided to develop its own green product.  Hydro then pulled out of any further negotiations.  It now appears that Hydro used the information that it received under the NDA to design a competing stormwater filtration product.

C.     **Hydro's Patent Application and Adverse Office Action by the USPTO Based on the '885 Patent**

34.     On March 3, 2016, Hydro (UK) filed U.S. Provisional Application No. 62/303,127 (the "Hydro Provisional Application") that was directed to a water treatment apparatus and included several elements of the non-public improvements discussed that had been disclosed to Hydro pursuant to the NDA.  Fink and Lemont were identified as the inventors. Hydro (UK) was the applicant.

35.     Later, on December 14, 2016, Hydro (UK) filed U.S. Patent Application Serial No. 15/379,223 (the "Hydro '223 Application"), claiming priority to the Hydro Provisional Application, which was directed to the same water treatment apparatus for treating stormwater. Lemont and Fink later assigned any rights they had under Hydro Provisional Application and the Hydro '223 Application to Hydro (UK).

36.     In connection with filing the Hydro '223 Application on December 14, 2016, Hydro (UK) also submitted an Information Disclosure Statement pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98.  Although Hydro was then under a duty to disclose any and all relevant patents, patent applications, and other literature that was related to the subject matter of its patent application pursuant to 37 C.F.R. §1.56, Hydro conspicuously omitted StormTree's '885 Patent from its Information Disclosure Statement despite having actual and intimate knowledge of it.

37.     On October 24, 2017, StormTree filed a third-party submission with the U.S. Patent and Trademark Office under 37 C.F.R. § 1.290 bringing the '885 Patent and the PCT Application to the USPTO's attention in connection with Hydro's pending application.

38.     On April 2, 2018, the USPTO issued an "Office Action" directed to the Hydro '223 Application, wherein the USPTO rejected specific claims of the application as being

anticipated by the '885 patent and other claims were rejected as being anticipated by the Iorio PCT application.

39.     Following the Office Action, Hydro modified their patent application and sought approval of a new patent, (issued as U.S. Patent No. 10,174,494) without making any claim for an open bottom and open sided structure.  Nevertheless, Hydro developed and began marketing an "open design" tree filtering system in or about 2018 that it called the Hydro Bioinfiltrator and that it marketed as "patent pending".  The Hydro Bioinfiltrator unit did not conform to the specifications of Hydro's modified patent application, nor its issued patent, 10,174,494 which infringed on StormTree's claims under the '885 Patent. A true and correct copy of the Hydro patent 10,174,494 is attached hereto as Exhibit F.

40.     Hydro later rebranded its Hydro Bioinfiltrator product as "StormScape™," a confusingly similar name including that Hydro capitalized the letter "S" in the second syllable of the product name, and has been marketing and promoting its "StormScape™" product in trade and commerce throughout the United States and worldwide, including on its website and other marketing materials; and, of recent Hydro has been blatantly attempting to freeload off StormTree's website presence by purchasing and placing Google Adwords positioning Hydro to the top of the page and directing those who conduct an internet search of the word "Stormtree" to Hydro's website. The screenshot below depicts this deceptive practice as occurring following a Google internet search on December 31, 2020.



**D.     Hydro's Infringement of the '885 Patent**

41.     In June 2018, Iorio attended and exhibited at the Florida Stormwater Association Conference, at which Hydro was also an exhibitor. Hydro was then promoting an "open design" tree filtering system that it called its Hydro Bioinfiltrator product and about which it claimed a "patent pending."  In connection with its marketing efforts at the Florida conference, Hydro was distributing a promotional brochure, a true copy of which obtained by Iorio is attached hereto as Exhibit D (the "Hydro Brochure").  The device depicted in the Hydro promotional material infringes at least one claim of the '885 Patent under 35 U.S.C. § 271(e)(2), either literally or under the doctrine of equivalents.

E.     **Hydro's Infringement of the '392 Patent**

42.     On February 18, 2020, the USPTO approved the '940 Application and issued to

Iorio, as inventor, U.S. Patent No. 10,563,392, entitled "Stormwater Biofiltration System and

Method" ("the '392 Patent"), a true and correct copy of which is attached hereto as Exhibit E.

43.     The claims of the '392 Patent are directed to a stormwater treatment system

comprising an "at least four substantially open vertical sidewalls" and "a partial horizontal top

sidewall" and without "a bottom wall or a sump/open bottom" forming a table-like structure as

illustrated from Figure 3c below as part of the '392 patent.  In Figure 3c, feature 1 is the claimed

device, feature 6 is the engineered media, feature 9 is the native soil and features 91 and 92 are

openings. Iorio assigned the '392 Patent to StormTree.



FIG. 3c

44.   Hydro's StormScape™ product infringes on StormTree's claims 1-15 of its '392

patent as shown below:

| StormTree® | Hydro StormScape™ |
|---|---|



As illustrated above, claim 1 of the '392 patent is directed to:

> Claim 1: A stormwater treatment system with bioretention functionality comprising of at least four substantially open vertical sidewalls ① and a partial horizontal top sidewall ② affixed to one or more of said sidewalls ①, wherein when said system is partially buried in the ground, said partial horizontal top sidewall ② exposes the interior ③ of the system to the atmosphere ④; further wherein said system contains discrete layers of organic and inorganic or a mixture of organic and inorganic material ⑤; provided said system does not have a bottom wall or a sump. **Id.**

According to Hydro's website "finer particles and pollutants will be trapped on the top layer (3 inches or so) of engineered filter media ⑤." Since all of the limitations contained in claim 1 of the StormTree '392 patent are found in the Hydro product, therefore, the Hydro product infringes claim 1 of the '392 patent.

F.      **Infringement of StormTree's Trademarks**

45.      On May 5, 2020, Hydro filed for a trademark registration with the USPTO for the mark StormScape™.  Hydro filed this trademark application with the USPTO notwithstanding their knowledge of the use and existence of the StormTree® mark in the same class and for the same product. The goods and services description for the StormTree® mark brands "[f]iltering units for removing sediment and contaminants from stormwater influent using a soil media," whereas the goods and services description for the StormScape™ mark brands "a stormwater treatment and detention system within the field of bioretention comprised of baffle walls, engineered filter media and plant life."

46.      Hydro has been promoting the open design of its StormScape™ product in webinars that are available on YouTube and the internet.  For instance, on June 18, 2020, David Mongeau conducted a webinar, posted on YouTube on July 1, 2020, marketing Hydro's StormScape™ product in which he states at various points of the webinar:

> "…the system itself is designed around what you know we like to refer to as a table type design so it has an *open bottom and sides* this allows the vegetation to thrive more quickly",
>
> "by having an *open bottom* we look to avoid these types of problems so you know one of the clear advantages of this with an *open base*…",
>
> "we like to refer to [StormScape] as a table type design so it has an *open bottom and sides*"
>
> *(https://www.youtube.com/watch?v=buONeT5sxGw&t=242s transcript 11/09/20)*



Screenshot from YouTube Hydro webinar
(https://www.youtube.com/watch?v=buONeT5sxGw&t=242s, YouTube post July 1, 2020)

47.     Similarly, on April 24, 2020, Hydro posted a webinar on YouTube.  Based on the

cover page of this webinar, Jeremy Fink hosted the webinar marketing the then called Hydro

Bioinfiltrator system.  During the webinar he states:

> "…we've got a really open structure. The point with the
> Bioinfiltrator was that people said we need to have the most
> contact with the native soils to make sure we have as much
> infiltration as can be possible.  We don't want to be limited by the
> concrete box that is provided. So these components make up an
> open system that allows for runoff to go right into the native soils
> and allow tree roots to migrate out and keep that soil free flowing."

> (Tips and Tricks for Reducing Runoff—Jeremy Fink,
> https://www.youtube.com/watch?v=pCMZ9S2UdpA, April 24,
> 2020 transcript)



Screenshot from YouTube
( https://www.youtube.com/watch?v=pCMZ9S2UdpA, YouTube post April 24, 2020)

48.     Hydro is also marketing and promoting the StormScape™ through materials available and downloadable on its website.  The following is a true reproduction from the Hydro website.





**F.      Hydro's Attempts to Undermine StormTree's Market Share Under False Pretenses**

49.      In addition, Hydro is currently seeking two industry accreditations, known respectively as TAPE and NJCAT, for its StormScape product.  These accreditations are requirements for selling and installing manufactured stormwater treatment devices in several States and, consequently, are necessary to effectively take part and compete in the stormwater filtration market.  If Hydro is successful in obtaining a TAPE and/or NJCAT certification based on a product that infringes either the '885 and/or '392 patents, StormTree will be immediately threatened with losing long term customers, not just individual sales.

50.      The tree filter segment of the stormwater management marketplace is a small, niche market.  There are only three or four companies in the United States that manufacture and sell a stormwater filter system.  While StormTree is a small emerging company, it occupies a large role in this niche market because StormTree is the only company that sells a patented open design stormwater filter system.  Since its inception in 2014, StormTree has carefully and deliberately developed its product line around the open design concept and has cultivated a reputation within the industry as a sole provider of such.  StormTree has also been diligent in building the proper patent and trademark protections for its products as well as actively pursuing TAPE and intending to pursue NJCAT certifications and accreditations at substantial cost.

51.      Hydro's brazen misappropriation and marketing of its stormwater filtration device developed using information disclosed under the NDA and sold under the StormScapeTM mark infringes on StormTree's federally registered patents and trademarks.  Hydro's infringement has not only caused StormTree to lose sales and revenue, but is now threatening to cause StormTree, a small Rhode Island business, irreparable harm through the loss of future sales and prospective

customer relationships.  Moreover, because the value of StormTree as a going concern is integrally tied to its exclusivity rights under the '885 and '392 Patents and its federal trademark registrations, Hydro's infringement devalues StormTree's business and technology among Hydro's competitors in the marketplace.

52.     Hydro's knowing and willful infringement of those rights threatens StormTree's position in the marketplace such that StormTree lacks an adequate remedy at law and will suffer irreparable harm if Hydro's unlawful conduct is not immediately and permanently enjoined.

## Count I
## (Breach of Nondisclosure Agreement)

53.     StormTree realleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54.     The NDA is a lawful and binding agreement among StormTree, Hydro (US) and Hydro (UK) under which Hydro (US) and Hydro (UK) agreed, *inter alia*, "not to use the information in such a way as to cause the receiving party or any third party to gain commercial advantage over the disclosing party."

55.     Implied in the NDA is an obligation of good faith and fair dealing, which, in this case, embodies an implied obligation not to use the information received pursuant to the NDA to develop a competing product and to compete directly against StormTree having developed a competing product based on the fruits of the information that was protected under the NDA.

56.     Hydro (US) and Hydro (UK) received certain non-public information pursuant to the NDA, including, but not limited to, technical data concerning the improvements to the '885 patent and the newly developed technology claimed in the '392 patent which is described in the '618, and '752 and '622 Applications prior to their publication, Pursuant to the NDA, StormTree also granted to Hydro, Dr. Dietz's exclusive access where he monitored and analyzed data and

19

disclosed to Lisa Lemont in or about May, 2015, Iorio's mental impressions and know how concerning an open design system and the soil media elements contained therein. Additional non-public information which Hydro obtained pursuant to the NDA, included StormTree's installation processes and techniques which Hydro observed in California and elsewhere.

57.     Hydro entered into the NDA, not for its stated purpose of negotiating a joint marketing agreement with StormTree, but rather for an improper purpose of mining StormTree for information about StormTree's company, product and proprietary information, and Hydro used the information that it received pursuant to the NDA to develop a competing product. Alternatively, even if Hydro initially was acting in good faith, Hydro's intention changed when StormTree declined to sell an ownership interest in its company.

58.     Hydro (US) and Hydro (UK) breached, and continues to breach, the NDA by using the confidential information that it obtained pursuant to the NDA to their own advantage and to StormTree's disadvantage in the marketplace.

59.     As a direct and proximate result of Hydro (US) and Hydro (UK)'s breach of contract, StormTree has been caused to suffer injury.

**Count II**
**(35 U.S.C. § 271)**
**(Infringement of the '885 Patent)**

60.     StormTree realleges and incorporates by reference Paragraphs 1 through 58 as if fully set forth herein.

61.     Hydro has had actual notice of the '885 Patent since at least October 2014.

62.     Hydro made and is now making, using, offering to sell, and/or selling a stormwater filtration device within the United States and possibly elsewhere that infringes upon the subject matter of the '885 Patent.

20

63.    Hydro intentionally failed to disclose to the USPTO the '885 Patent during the prosecution of its '223 Application and has since engaged in the conduct of making, using, offering to sell, and/or selling an infringing stormwater filtration device even in the face of the Office Action rejecting its patent application based, in part, on the '885 Patent.

64.    Hydro has knowingly and intentionally infringed and continues to infringe one or more claims of the '885 Patent, either literally or under the doctrine of equivalents. StormTree has suffered and will continue to suffer substantial damage and irreparable harm as a result of Hydro's continuing infringement of the '885 Patent, including, but not limited to, the loss of commercial value of its stormwater filtration systems incorporating the '885 Patent, loss of value of its Patent, loss of goodwill, and other injuries to StormTree 's business.

65.    StormTree has and will suffer further damage and irreparable injury unless and until Hydro is enjoined from continuing infringement of the '885 Patent. StormTree is entitled to an accounting of Hydro's profits derived from the offering of sale of the infringing product. StormTree has no adequate remedy of law.

66.    Hydro has committed such acts, and will continue to commit such acts, in an intentional and willful manner that make this case exceptional under 35 U.S.C. § 285.

**Count III**
**(35 U.S.C. § 271)**
**(Infringement of the '392 Patent)**

67.    StormTree realleges and incorporates by reference Paragraphs 1 through 65 as if fully set forth herein.

68.    Hydro has had constructive notice of the '392 patent since February 24, 2015, when StormTree disclosed non-public information to Hydro under the NDA.

69.     In the alternative, Hydro has had actual notice of the '392 patent since February 16, 2017 when the PCT published.

70.     Hydro has had actual notice of the '392 Patent since June 28, 2018 when the §371(c)(1) application published.

71.     In the alternative, Hydro had actual knowledge of the '392 patent since February 18, 2020, when the '392 patent issued.

72.     Hydro is now making, using, offering to sell, and/or selling a stormwater filtration device within the United States and possibly elsewhere that infringes upon the subject matter of the '392 Patent.

73.     Hydro has knowingly and intentionally infringed and continues to infringe one or more claims of the '392 Patent, either literally or under the doctrine of equivalents. StormTree has suffered and will continue to suffer substantial damage and irreparable harm as a result of Hydro's continuing infringement of the '392 Patent, including, but not limited to, the loss of commercial value of its stormwater filtration systems incorporating the '392 Patent, loss of value of its Patent, loss of goodwill, and other injuries to StormTree 's business.

74.     StormTree has and will suffer further damage and irreparable injury unless and until Hydro is enjoined from continuing infringement of the '392 Patent. StormTree is entitled to an accounting of Hydro's profits derived from the offering of sale of the infringing product. StormTree has no adequate remedy of law.

75.     Hydro has committed such acts, and will continue to commit such acts, in an intentional and willful manner that make this case exceptional under 35 U.S.C. § 285.

**Count IV**
**(15 U.S.C. §§1114 and 1125)**
**(Infringement of Federally Registered Trademark)**

76.    StormTree realleges and incorporates by reference Paragraphs 1 through 74 as if fully set forth herein.

77.    StormTree has a federally registered trademark StormTree®.

78.    Hydro filed for a trademark registration from the USPTO for the mark StormScapeTM which is confusingly similar to the StormTree® mark right down to capitalizing the letter "S" in the second syllable of the product name.  Hydro is using the StormScapeTM mark to market its product.

79.    Hydro had actual knowledge of the use and existence of the StormTree® mark which was being used in the same class.

80.    There is a likelihood of confusion between StormTree® and StormScapeTM.

81.    StormTree is known in the stormwater industry and has goodwill in the industry. Hydro is using the StormScapeTM mark on its on its website, (www.hydro-int.com), webinars, and other marketing materials to trade off of the goodwill of StormTree.

82.    Hydro is misappropriating the goodwill that StormTree has established by using this confusingly similar mark for the exact same goods and services. As a result, Hydro's use of the mark is infringing on StormTree's federally registered trademarks and is causing injury to StormTree.

83.    Hydro has committed such acts, and will continue to commit such acts, in an intentional and willful manner that make this case exceptional under 15 U.S.C. § 1117(a).

**Count V**
**(RIGL § 6-41-1)**
**(Misappropriation of Trade Secrets)**

84.     StormTree realleges and incorporates by reference Paragraphs 1 through 82 as if fully set forth herein.

85.     The Rhode Island's Uniform Trade Secrets Act ("RI UTSA"), RIGL § 6-41-1 at seq, defines "trade secret" as any information, including, a device, method, technique, that derives economic value from not being generally known, and not being readily ascertainable by proper means by other persons that could obtain economic value its disclosure or use, and that it is subject to the efforts that are reasonable under the circumstances to maintain secrecy.

86.     Hydro, pursuant to the NDA, came in possession of trade secrets defined by the RI UTSA.  As described, StormTree disclosed non-public information to Hydro, which information are trade secrets under the RI UTSA.  StormTree regularly maintains the secrecy of this information, and specifically attempted to maintain the secrecy of this information through the execution of an NDA with Hydro (US) and Hydro (UK).

87.     Hydro has actually misappropriated and continues to threaten to misappropriate StormTree's trade secrets in violation of RI UTSA.  StormTree disclosed the trade secret information described above to Hydro, and Hydro acquired the information under circumstances giving rise to a duty to maintain and limited its use and not to exploit and not to use such trade secret information for its own advantage.   As a direct and proximate result, Hydro's misappropriation and threatened misappropriation of StormTree has suffered and will continue to suffer, damages in an amount to be proved at trial.  Moreover, StormTree's remedy at law is inadequate, and therefore, seeks a permanent injunction to prevent any further misappropriation or exploitation of trade secret information disclosed to Hydro pursuant to the NDA.

**Count VI**
**<u>(Fraud)</u>**

88.     StormTree realleges and incorporates by reference Paragraphs 1 through 86 as if fully set forth herein.

89.     Hydro induced StormTree into believing that they would help StormTree obtain business.

90.     Hydro and StormTree were working towards a "Joint Marketing, Sales, and Order Fulfillment Agreement" and/or other relationship.

91.     StormTree continued doing business with an understanding that Hydro and StormTree were working towards a "Joint Marketing, Sales, and Order Fulfillment Agreement" and/or other relationship.

92.     However, Hydro never intended to enter into a joint marketing agreement. Rather, Hydro was using StormTree as leverage for obtaining intimate details regarding StormTree's '885 and '392 Patents and inducing StormTree to disclose proprietary information to it under false pretenses.

93.     Hydro's acts were fraudulent, and as a direct and proximate result, has caused StormTree damage.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff MMT, Inc d/b/a StormTree prays for judgment in its favor and against Defendants Hydro International Inc., HIL Technology, Inc., and Hydro International plc and requests that:

a)   Judgment entered in favor of Plaintiff and against Defendants on each Count of this Verified Complaint;

b)   Defendants be adjudged to have infringed the '885 Patent and '392 Patent and that such infringement be adjudged to have been exceptional;

c)   Defendants be adjudged to have infringed their duty to disclosure under 37 C.F.R §1.56 and such infringement be adjudged to have been made intentionally and/or in bad faith;

d)   Defendants '223 patent and all child applications be held invalid or unenforceable due to the defendant's bad faith or intentional violation of their duty to disclosure under 37 C.F.R §1.56;

e)   Defendants be adjudged to have infringed Plaintiff's federally registered trademark and that such infringement be adjudged to have been exceptional;

f)   Defendants, and their officers, agents, servants, employees, attorneys, and all other persons acting in concert, participation, or privity with the Defendants be forthwith be temporarily, preliminarily and thereafter permanently restrained and enjoined from infringing the '885 Patent and the '392 Patent and the StormTree® mark;

g)   Defendants be temporarily, preliminarily and thereafter permanently enjoined and ordered to:

26

(i) Cease making, using, offering to sell or selling a stormwater filtration device that infringes upon the '885 Patent and the '392 Patent and all other patents pending;

(ii) Cease making, using, offering to sell or selling a stormwater filtration device that infringes upon the federally-registered StormTree® mark;

(iii) Remove all infringing products from any and all literature and promotional materials from the Internet, catalogs, retail stores, distributors, architects, engineers, contractors, and other channels of trade;

(iv) Remove all infringing products that have been installed;

(v) Omit references to any infringing product on the Internet, in future catalogs, in retail stores, in advertisements and all other channels of trade;

(vi) Recall from its employees, subsidiaries, dealers, distributors, resellers and customers, any and all infringing products and advertising of infringing products; and

(vii) Surrender for destruction, or other disposition at the election of MMT, Inc., all components-in-progress, components, production materials, products, castings, fixtures, prints, design/construction details, solid modeling, prototypes, engineering records, and all means of manufacture associated with the production of infringing products;

h)   Plaintiff be awarded compensatory damages in an amount no less than a reasonable royalty of Defendants ' gross sales of any infringing products;

i)   Plaintiff be awarded treble damages pursuant to 15 U.S.C. § 1117(b) and 35 U.S.C. § 284 because of the willful nature of Defendants' acts;

j)   Plaintiff be awarded exemplary damages pursuant to RIGL §§ 6-41-3;

k)   Plaintiff be awarded prejudgment interest;

l)   Plaintiff be awarded its costs, attorneys' fees, and expenses in this suit under 15 U.S.C. § 1117(a), 35 U.S.C. § 285 and RIGL § 6-41-4;

m)  Plaintiff be awarded such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED ON ALL COUNTS THAT MAY BE SO TRIED**

MMT, INC. d/b/a StormTree

By its attorneys,

*/s/ Alan F. Feeney*

_____

Alan F. Feeney #9250
FEENEY IP LAW
235 Promenade Street, Suite 141
Providence, RI  02908
Tel.: (401) 660-6079
Email: alan@feeneylawgroup.com

## VERIFICATION

I, Paul Iorio, hereby verify, under the penalties of perjury: (a) that I have read the foregoing Verified Complaint; and (b) that the allegations contained in the Verified Complaint are true and accurate based upon my personal knowledge, except such allegations as are made upon information and belief, which allegations I believe to be true based on the information known to me, and the legal conclusions that are drawn from the verified allegations.

Paul Iorio